UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: Danny Carney, | ) | Bankruptcy No.  12-84145 |
| | ) | |
| Debtor. | ) | Adversary No.  13-96012 |
| | ) | |
| Perry C. Spohn, | ) | Chapter 7 |
| Plaintiff, | ) | |
| v. | ) | Judge Lynch |
| Danny Carney, | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Danny Carney purchased Riverside Pub, a bar and grill located in Sycamore,
Illinois, from Perry's Riverside Pub, Inc. in October 2009.  Perry C. Spohn was the
seller's president.  The parties agreed to a purchase price of $100,000 to be paid in
monthly installments through November 2019.  Mr. Carney, who appears to have had
no appreciable prior experience running a business—let alone a restaurant—took
possession, renamed the establishment Joker's Pub and struggled to make a go of it.
He operated the business through an Illinois corporation, Danny Carney, Inc., for at
least a portion of the period relevant to this dispute.  It seems fortunate that the
Debtor kept his day job because his establishment lost money on a consistent basis.
After making the initial $30,000 down payment and approximately $25,000 in
monthly payments, the Debtor eventually defaulted on his obligation to pay the
balance of the purchase price.  On October 31, 2012, Mr. Carney filed a rather
muddled individual petition for relief under Chapter 7 of the Bankruptcy Code.

Neither Perry's Riverside Pub, Inc. nor Mr. Spohn filed a proof of claim in the

Debtor's bankruptcy case. Instead, Mr. Spohn brings this adversary proceeding to deny the Debtor a discharge pursuant to Sections 727(a)(2) and (4) of the Bankruptcy Code. In his "Complaint to Object to Debtor's Discharge," the Plaintiff alleges that the Debtor did not list income received from the bar or business property that he owns in connection with the bar and grill and that he transferred assets to the corporation with the intention of hindering, delaying and defrauding his creditors and the bankruptcy estate.

Based on the evidenced adduced at trial and the stipulations of the parties, this court finds that the Plaintiff has failed to meet his burden to prove that the discharge may be denied Mr. Carney and, therefore, his objection is OVERRULED. The court makes the findings of fact and conclusions of law set forth below in accordance with Bankruptcy Rule 7052. Based on these findings judgment will be entered in favor of the Debtor and against the Plaintiff on the claims alleged in the adversary complaint. Accordingly, the Plaintiff's objection to discharge is overruled and judgment shall be entered in favor of the Defendant.

## JURISDICTION

The court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). The Chapter 7 bankruptcy discharge is a statutory injunction created by Sections 524 and 727 of the Bankruptcy Code and therefore the determination to deny a discharge is a matter that arises under Title 11 and is within this court's

constitutional authority to enter final judgment. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011) (bankruptcy courts have authority to issue final judgment on an issue that "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."). Additionally, both the Plaintiff and the Defendant expressly consented to this court entering final judgment in the matter. (*See* Plaintiff's Statement of Jurisdiction (ECF No. 82); Debtor's Supplemental Statement of Jurisdiction (ECF No. 84).)

## PROCEDURAL HISTORY

The Debtor commenced this Chapter 7 case on October 31, 2012. The Debtor listed Perry Spohn as the holder of an unsecured claim of $56,420.00 in Schedule F attached to his bankruptcy petition. On February 4, 2013, Perry Spohn filed an adversary complaint to object to the Debtor receiving a discharge. The Debtor does not object to Mr. Spohn's standing to raise this objection. The pleading, consisting of a single count, alleges that the Debtor failed to properly reveal his interest in certain business assets in his Schedule B and failed to disclose all income and expenses from his business operations. Mr. Spohn further alleges "on information and belief" that Mr. Carney transferred "property of the debtor and property of the estate with intent to hinder, delay, or defraud a creditor." The complaint asks the court to enter "an order denying discharge in this matter" pursuant to 11 U.S.C. § 727(a)(2)(A) and (B) and § 727(a)(4).

The Debtor timely answered the complaint, and shortly afterward the parties filed cross motions for summary judgment. The court denied their motions finding

several questions of material fact to exist. In particular, the court noted that material factual disputes were evident as to the fraudulent intent (if any) of the Debtor, his personal liability for corporate debts after its administrative dissolution and the effect (if any) of payments on the corporation's behalf and whether the Debtor received distributions that should have been disclosed. The court permitted the parties adequate time for discovery on the issues after which a trial on the merits was conducted. At the outset, the parties stipulated to the admissibility of several exhibits and called the Debtor to testify as the sole witness. As stipulated, the parties agreed to the admissibility and use of fifteen exhibits, including a copy of the Asset Purchase Agreement (without, as will be discussed below, the Exhibit A referenced in that document), as well as the transcripts of Mr. Carney's deposition taken by the Plaintiff on August 10, 2013 (Ex. 6) and the Section 341 meeting of creditors conducted by the Chapter 7 trustee on December 6, 2012. (Ex. 2.) The parties have also stipulated to certain facts. (ECF No. 52.) Mr. Carney was the sole witness called to testify at the trial by either side.

## FINDINGS OF FACT[1]

From its consideration of the evidence adduced at trial, the stipulations of the parties, and the court's review and argument of counsel, and having taken judicial notice of its own docket, the court makes the following findings of fact.

*The Debtor*. Danny Carney has some post-secondary education but did not

---

[1] The following sets forth this court's findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

earn a degree.  In his words, he almost obtained an associate's degree "but not quite." He and his wife reside in the home they own in Sycamore, Illinois.  It appears that the Debtor has had little, if any formal business education or experience outside of his failed bar and grill venture.  He has been employed by ADP Payroll Services for more than nine years.  According to his petition, Mr. Carney works there as a "payroll technician" for which he receives a monthly salary of $5,558.28.  His spouse is not employed.  The Debtor testified that before he purchased the bar he had limited business experience, or "no prior business" as he phrased it.

*Joker's Pub*.  The Riverside Pub was a bar and grill located in Sycamore, Illinois.  On or about October 26, 2009 the Debtor, individually, and Perry's Riverside Pub, Inc. ("PRP") entered an Asset Sale Agreement whereby Mr. Carney acquired the "furnishings, furniture and equipment, supplies, counters and shelves, inventory and stock in trade, and good will of the Riverside Pub" for the purchase price of $100,000. Perry Spohn signed the agreement as president of PRP.  Under its terms the Debtor paid the seller an initial down payment of $30,000 and agreed to pay PRP the balance plus 8% annual interest in 120 equal monthly installments of $854 beginning December 1, 2009.  Mr. Carney separately signed a lease agreement for the premises with another party, Jeff Bridge.

The Asset Sale Agreement contains ambiguous and inconsistent terms.  For example, one paragraph declares that "all property agreed to be sold hereunder shall be delivered" at "the time of closing" while another states that the seller shall deliver a bill of sale for the stock in trade and other property sold under the agreement upon

"tender of the final payment of the sales price at closing." (Ex. 1.) While these terms might make sense if delivery and payment of the purchase price occurred simultaneously, it is undisputed that in fact the property sold was delivered to the Debtor in November 2009 even though only the down payment had been made and the agreement expressly contemplated Mr. Carney making monthly payments over the next ten years.

The Asset Sale Agreement also states that the purchase price is $100,000 "plus the value of the stock in trade and inventory" with the "cost to the Buyer for Seller's inventory [to] be based on the dollar amount Seller paid for said inventory [and the] inventory [to] be taken the day before the closing." (*Id.*) Notwithstanding this language in the agreement, all testimony and other evidence presented showed that the purchase price was simply $100,000 and that there was never a closing day inventory. It appears that Mr. Carney, Mr. Spohn and PRP were not represented by counsel in connection with the negotiation and preparation of the sale agreement (Depo. Tr. 69:4-8), and the parties did not present any evidence to explain, let alone attempt to harmonize, these inconsistencies. At the Section 341 meeting of creditors, Mr. Spohn's (then) counsel argued that under the terms of the agreement title to the property never passed from PRP to Mr. Carney because Mr. Carney failed to tender the "final payment of the sales price." In this Adversary Proceeding, however, Mr. Spohn now argues that title did pass and that Mr. Carney should have listed the property he purchased under the agreement in his bankruptcy schedules.

It is undisputed that the Debtor assumed possession of the premises and began

to operate the restaurant in November 2009. (Depo. Tr. 10:5-7.) The Debtor testified that at least for a time after he acquired the pub he relied on the advice of Lalley Accounting Services, his accountants, for business decisions regarding Joker's Bar and Grill. Mr. Carney renamed the establishment "Joker's Bar and Grill" and hired twelve waitresses or bartenders, a chef and two bouncers. The City of Sycamore granted a Class "B" bar liquor license to "Joker's Bar and Grill operated by Danny Carney" on or about November 24, 2009. And the establishment opened for business before the end of 2009.

On or about February 3, 2010, the Debtor formed Danny Carney, Inc., an Illinois "C" corporation. At all times since then Mr. Carney has been its sole owner, officer and manager. After its incorporation, Mr. Carney used Danny Carney, Inc. to manage and operate Joker's Bar and Grill. At trial, Mr. Carney testified that he had not transferred the pub property acquired from PRP "to anyone else or to Danny Carney, Inc." between the date of incorporation and the date of his bankruptcy petition. However, at the August 2013 deposition he testified that he did not understand the nature of incorporation and believed that once he "incorporated" the "stuff that was in the bar belonged to the business" automatically if the business "ran" it. (Depo. Tr. 65:13-24.)

It is not disputed that Carney's foray into the pub business was less than a resounding success. The business had customer sales—including during early 2010 before Danny Carney, Inc. incorporated—but the evidence shows that it was rarely, if ever, able to meet its expenses. Mr. Carney testified that there may have been one

or more months in which the business had net income, but he could not recall or identify any specific period. The only documentary evidence presented at trial reveals that the business was consistently losing money. The federal tax return for Danny Carney, Inc. for the calendar year beginning December 1, 2009 and ending September 30, 2010 showed a net operating loss of $(36,532).[2] The Plaintiff presented business records showing that the corporation had net losses totaling $(38,700.73) during the six-month period from March 2012 through August 2012, with no single month during that period having losses of less than $(4,000).

Mr. Carney also testified credibly that he never took a salary, draw or distribution from the corporation during its existence. To the contrary, he credibly testified that he regularly had to contribute his personal funds to the company for it to be able to pay its ongoing business expenses. Indeed, Carney testified that he could not recall a month when he did not need to do so. He testified that he would transfer funds from his personal account to the business account, from which the corporation would pay vendor, utility and rent expense bills of Jokers Bar and Grill that were due. His testimony was credible. As he explained, he purchased inventory, "like liquor and beer," on a weekly basis. He had no line of credit with vendors, but rather operated on a cash on delivery basis. The bar would have had to have closed if it could not pay for the liquor or could not pay rent. He testified that the bills of Jokers Bar and Grill were paid from the pub's sales receipts and, when those were

---

[2] The Debtor could not explain why the corporate tax return included the period from December 1, 2009 through February 3, 2010 before the company was incorporated, other than that he relied on the advice of his accountant. The tax return indicates that it was prepared by Lalley Accounting Services Ltd. (Ex. 8.)

insufficient, from his personal funds. Despite the ample opportunity afforded him for discovery, the Plaintiff failed to rebut Carney's credible testimony that these expenses needed to be paid when incurred to enable the pub to operate and so were incurred in the ordinary course of the pub's business.

The Illinois Secretary of State administratively dissolved Danny Carney, Inc. on or about July 13, 2012. The Debtor testified that he tried, unsuccessfully, to resolve the problem "filling out the forms" himself before he consulted with an accountant and finally secured reinstatement. The parties have stipulated that Danny Carney, Inc. was reinstated by the Illinois Secretary of State on August 21, 2013. (ECF No. 52.) It is uncontroverted that Danny Carney, Inc. thereafter remained in good standing through at least the date of trial in March 2014.

During his Section 341 meeting of creditors the Debtor admitted that he had defaulted on the payment obligations under the Asset Sale Agreement, though neither party provided any information on when or how much that default was. Where asked about payments to creditors within 90 days before the petition date in the Statement of Financial Affairs ("SOFA") filed with his bankruptcy petition, the Debtor stated that he had paid Mr. Spohn $2,562.00 on July 9, 2012, and that $56,420.00 of the debt remained outstanding. Mr. Carney testified at the August 2013 deposition that he had paid Mr. Spohn approximately $55,000 in total.

*The Bankruptcy.* Mr. Carney filed his voluntary Chapter 7 petition on October 31, 2012. He testified that he met with his attorney several times to prepare his petition and schedules. Each meeting lasted "at least a few hours" according to Mr.

Carney. The Debtor admitted that he reviewed his completed petition and schedules with his attorney before they were filed, testifying further that he believed their contents to be correct when they were filed. Along with his schedules he filed his signed declaration attesting "under penalty of perjury" that the information he had given to his attorney is true and correct, and that he had reviewed the petition, statements, schedules and other documents being filed and that they are "true and correct."

In fact, his initial filings contained several errors or omissions with respect to the bar and grill. In particular, where required to list all personal property "of the debtor of whatever kind" in his original Schedule B, Mr. Carney checked "None" as to any having any "Stock and interest in incorporated and unincorporated businesses" or any licenses. In fact, he was the 100% shareholder of Danny Carney, Inc., and the Illinois liquor license for the bar had been issued in his name as "Joker's Bar and Grill operated by Danny Carney." The Debtor did not list his out-of-pocket payments for the expenses of his pub in his Schedule J. He also failed to list any "gross ... income" received from the operation of the bar during the calendar year 2010 in response to question 1 of the SOFA, despite operating Joker's Bar and Grill as a sole proprietorship for the first 33 days of 2010. Finally, he failed to list either "Riverside Pub" or "Joker's Bar and Grill" as doing business as or trade names in either the petition or in his SOFA, despite operating the bar under those names for a short period before he incorporated Danny Carney, Inc.

The record shows, however, that much of this information was disclosed

elsewhere in the schedules and required statements. His original SOFA disclosed the existence of his corporation, Danny Carney, Inc. as a "bar" operating from "11/2009 to present," although it failed to mention that the bar was run as an unincorporated sole proprietorship until February 2010 or that the corporation had fallen out of good standing on or about July 13, 2012. His SOFA also stated that there were two inventories of his "property" supervised by Jessica Ross in August and September 2012, disclosing their dollar amount and basis to be $13,408.32 and $11,464.30. Schedule G to his petition also listed the "lease on nonresidential real property" for the bar and grill as an executory contract. In his Form B22A statement Carney disclosed that he operated a business which in the prior six calendar months had average monthly gross receipts of $4,915.10 and monthly ordinary and necessary business expenses of $10,367.88. The Debtor's initial SOFA stated that the Debtor held or controlled no property owned by another. He subsequently amended his SOFA on February 25, 2013 to disclose that he held at Joker's Bar and Grill in Sycamore neon bar signs and alcohol dispensers owned by Euclid Beverage of indeterminate value, a non-functioning ATM machine owned by Perry Spohn of indeterminate value, a pool table worth $500 and a juke box worth $5,000 owned by Wayne's Vending, and two dartboards worth $500 owned by Bob Corrigan.

The Debtor's SOFA states that no property, other than property transferred in the ordinary course of his business or financial affairs, had been transferred during the two years preceding his petition. However, the Plaintiff did not prove that the Debtor had in fact transferred any physical equipment, inventory or other assets to

Danny Carney, Inc. during that time. While the Debtor admitted he did transfer personal funds to the corporation during that period, the evidence showed such transfers to be in the ordinary course of his business or financial affairs. His initial SOFA listed his salary from ADP during 2010, 2011 and 2012, but did not list any income from the operation of Joker's Bar and Grill. The amended Statement of Financial Affairs expressly stated that there was "no income received from business" during those three years. The Debtor did fail to disclose the gross sales receipts that the business received while the bar was operated as a sole proprietorship from January 1, 2010 through February 3, 2010. However, the court finds credible the Debtor's uncontroverted testimony that he did not receive any salary, distribution or draw during the period that Joker's Bar and Grill was operated by Danny Carney, Inc. from February 3, 2010 through the petition date.

Accompanied by his attorney, the Debtor testified under oath at the Section 341 meeting of creditors conducted by the Chapter 7 Trustee on December 6, 2012. Mr. Spohn also attended that examination and through his attorney at the time questioned Mr. Carney under oath. During his examination, Mr. Carney admitted that he had read and signed his bankruptcy petition, schedules and all related documents, that there were no changes or corrections that should be made, and that the petition, schedules and related documents listed all of his assets and debts. The Debtor admitted during the meeting that during the last six years he had an ownership interest in "Joker's Bar and Grill," and answered, "yes," when then asked "[w]as that corporation Danny Carney, Inc.?"

During the creditors meeting the Debtor first answered "yes" when asked "[s]o does the corporation own the equipment," but later testified to the contrary. When asked "[a]re you suggesting the Danny Carney Incorporated owns the equipment and goods and inventory that's identified in this agreement?", he replied, "No, I'm not." To clarify, he indicated that he believed that under the agreement while he was purchasing goods, equipment, goodwill, stock and trade from PRP, he thought that Mr. Spohn somehow still "owns" it, perhaps mindful of the agreement's provision that PRP would deliver its bill of sale for the stock and property to Mr. Carney upon tender of the final payment of the sale price which had not occurred. Mr. Carney further denied receiving any distribution, draws or wages from the corporation, the income generated by the bar "just being used to ... fund continuing operations." He then testified that he had "been actually putting money in" to that business. Noting the Debtor's confusion and that "there are some omissions or some corrections or additions that should be made," the Chapter 7 trustee decided to conclude the meeting after Debtor's counsel promised to amend the filings, and to proceed with depositions as necessary.

Nearly ten weeks later, the Debtor filed an Amended Schedule B. It addressed his omission regarding his interest in incorporated and unincorporated businesses by listing "Danny Carney, Inc. d/b/a Joker's Bar and Grill." He filed his Amended SOFA three days later, disclosing the property owned by others but located at Joker's Bar and Grill, and clarifying that he had not personally received any income from the business during 2010, 2011 or 2012.

*Post-Petition Operation and Liquidation of Joker's Bar and Grill.* The Debtor admitted at trial that as of the petition date he intended to continue to operate Joker's Bar and Grill through Danny Carney, Inc., and that he realized he would have to continue to contribute personal funds to help it meet its ongoing operating expenses until it could become profitable. He also testified that he in fact continued to operate the business and continued making contributions post-petition. The Plaintiff has not alleged or provided evidence that Mr. Carney used any estate property to do so. Instead, it appears uncontroverted that he used only his post-petition income or exempt property to fund such contributions. It is also uncontroverted that the Chapter 7 trustee was aware and did not object to the continued operation of the bar and grill. At the Section 341 meeting of creditors, the Chapter 7 trustee warned the Debtor not to remove any equipment from the bar, but acknowledged that because "he is still operating this business ... if he is going to order a keg of beer and he is going to sell the beer, I'm not going to complain, but we are talking no barstools, no equipment, no ovens." (Ex. 2.)

The Chapter 7 trustee filed an initial report of assets on December 19, 2012. On December 20, 2012, the court sent notice of a claims bar date of March 22, 2013. Also on December 20, 2012, the Chapter 7 trustee commenced an adversary proceeding naming the Debtor, Danny Carney, Inc., Steve Richardson, Perry Spohn and Perry's Riverside Pub, Inc. as defendants. The adversary sought a declaration that any interests of the defendants in the business assets at Joker's Bar and Grill were either unperfected, unsecured, or otherwise inferior to the interest of the

bankruptcy estate. None of the defendants answered the complaint, and default judgment was entered in favor of the Chapter 7 trustee on February 25, 2013.

On January 30, 2013, the Chapter 7 trustee moved to sell the interest in and assets of Danny Carney, Inc., d/b/a Joker's Bar and Grill to the Debtor for $15,000. Mr. Spohn did not offer a competing bid, despite the opportunity to do so, nor did he offer proof of a higher value for the assets. Instead, Mr. Spohn objected to the trustee's motion on the grounds that he did not believe the Chapter 7 trustee took sufficient steps to advertise the sale of the property. The court held a brief evidentiary hearing on March 12, 2013, at which Mr. Spohn's attorney made a proffer of evidence. The court overruled the objection, finding that the weight of the evidence supported the trustee's motion and approved the sale to the Debtor for $15,000. Mr. Spohn has not alleged or offered proof that the purchase price was paid from assets of the estate.

The Chapter 7 trustee filed a final account on August 27, 2013, detailing his distribution of the $15,000 in proceeds, which was the only asset of the estate that he administered. Because Mr. Spohn did not file a timely proof of claim, he did not share in that distribution.

## DISCUSSION

### A. Section 727(a)(4)

The bankruptcy discharge is the mechanism by which the Bankruptcy Code provides a "fresh start" to Debtors. *Village of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). The party objecting to discharge of a debt bears the burden of

proof to establish the exception to discharge by a preponderance of the evidence. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966-67 (7th Cir. 1999). Exceptions to discharge under section 727 are liberally construed in favor of debtors and strictly against objectors. *In re Bostrom,* 286 B.R. 352, 358 (Bankr. N.D. Ill. 2002) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)).

Mr. Spohn first alleges that the Debtor knowingly and fraudulently made several false oaths or accounts such that he must be denied a discharge under 11 U.S.C. § 727(a)(4).

Section 727(a)(4) of the Bankruptcy Code provides that:

> (a) The court shall grant the debtor a discharge, unless—
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4). A party alleging the debtor has violated his oath has to prove by preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). The purpose of § 727(a)(4)(A) is to "enforce the debtor's duty of disclosure and to ensure that the debtors provide reliable information to those who have an interest in the administration of the estate." *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 879 (Bankr. N.D. Ill. 2004). For purposes of this section, a debtor's petition and schedules, statement of financial affairs, statements made at a § 341 meeting,

and testimony at a Rule 2004 examination all constitute statements that are made under oath. *Dilbay v. Demir (In re Demir)*, 500 B.R. 913, 920 (Bankr. N.D. Ill. 2013). Fraudulent intent may be proven by a showing of reckless disregard for the truth. "The cumulative effect of a number of false oaths by the debtor with respect to a variety of matters establishes a pattern of reckless and cavalier disregard for the truth by the debtor." *In re Stamat*, 395 B.R. 59, 74 (Bankr. N.D. Ill. 2008). Although not every single asset needs be scheduled and valued, there comes a point when the aggregate errors and omissions cross the line past which a debtor's discharge should be denied. *See Netherton v. Baker (In re Baker)*, 205 B.R. 125, 133 (Bankr. N.D. Ill. 1997) (debtor's failure to disclose his tropical fish hobby and its assets including over 100 fish tanks, constituted grounds for denial of his discharge.) Wherever that fine and elusive line may be, in this case the Plaintiff has failed to show that the Debtor crossed it.

### 1. *Omission of the Corporation, Doing Business Name and License*

Here the Plaintiff established that the Debtor failed to list: (1) his ownership of Danny Carney, Inc. in his original Schedule B, (2) the liquor license in his own name in his original and amended Schedule B and (3) doing business as or under the trade names Riverside Pub or Joker's Bar and Grill in either the petition or in the SOFA, despite running his bar under those names for a short period of time before he incorporated Danny Carney, Inc. While his denotation of "none" rather than listing this information in his schedules and Statement of Financial Affairs constituted false statements made under oath that related materially to the bankruptcy case, the

Plaintiff failed to demonstrate that the Debtor made them with the requisite fraudulent intent.

After carefully weighing the testimony of Mr. Carney, the court finds that these omissions were honest mistakes made by an unsophisticated person who found himself far beyond his depth for the demands of running the business, one who throughout the relevant period clearly showed that he did not understand the basic distinct nature of an incorporated entity. First, it is undisputed that Mr. Carney did disclose the name of his corporation and certain key information about it in his SOFA. The disclosure of this information elsewhere in his filings tends to show that its omission in Schedule B was the product of confusion and not intended to hide the existence of the company. In his response to question 18 on the statement Carney put down Danny Carney, Inc. as his business, and further listed the business' Sycamore address and tax identification number, stating that this was a bar operating from November 2009 "to the present." While the "starting date" of November 2009 was somewhat misleading in that the company was not incorporated until February 3, 2010, it is undisputed that Carney had in fact operated the bar since November 2009. For the first three months he operated it as an unincorporated business until he incorporated Danny Carney, Inc. at the suggestion of his accountant. The Debtor also disclosed the "lease on nonresidential real property" from Jeff Bridge at which the bar operated. The Debtor's Schedule G further described this lease of the Sycamore premises for the business to be "an executory contract." In response to question 20 of his initial SOFA, he disclosed the value of his

business inventory: $13,408.32 as taken on August 1, 2012 and $11,464.30 as of September 30, 2012. Further, he stated that his inventory records were found at the Sycamore location. At the very least these disclosures put creditors and the trustee on notice that he owned and operated a bar in Sycamore, Illinois through a corporate entity. The trustee and creditors were in fact able to ask him about this business at the meeting of creditors. While the disclosure of the company in these other portions of his schedules might not fully excuse his incorrect statements in Schedule B, the fact that he disclosed the corporation, the business lease and the inventories in those sections tends to show that his errors or omissions were not made with fraudulent intent.

The Debtor provided the trustee with copies of his most recently filed personal federal tax return and the most recently filed tax return for Danny Carney, Inc. prior to the Section 341 meeting. When asked by the Chapter 7 trustee whether he owned any businesses at the creditors meeting, the Debtor freely responded that he operated a small bar and restaurant in Sycamore called Joker's Bar and Grill through his corporation Danny Carney, Inc. He also discussed the lease of the real property and testified that the corporation owned the fixtures and equipment. He further testified at the Section 341 meeting that he continued to operate the business post-petition. The trustee appears to have been satisfied by these disclosures and was in fact later able to liquidate certain assets at the bar. When, at the conclusion of the creditors meeting, the trustee instructed the Debtor not to remove any equipment without his permission, the trustee then went on to acknowledge that the business was still

operating and so "if he is going to order a keg of beer and he is going to sell the beer, I'm not going to complain, but we are talking no barstools, no equipment, no ovens." (Cr. Mtg. Tr. 39 (Ex. 2).)

Additionally, the court finds credible the Debtor's testimony that he had informed his attorney of his business and corporation and relied on the attorney in determining how and where to list that interest in the bankruptcy schedules. During the deposition that the Plaintiff conducted on August 10, 2013, the Debtor testified that he had relied on his attorney—who was also present at the deposition and continues to represent him in this matter—in preparing his bankruptcy schedules and that he has never had the intent to deceive the trustee, the court or other creditors. (Depo Tr. 74:6-75:1 (Exhibit 6).)   The Plaintiff stipulated to the admissibility of this deposition testimony—never calling the attorney to testify, and at trial the Plaintiff did not offer any evidence to rebut this testimony.

The Plaintiff has also failed to demonstrate that the Debtor's omissions show a "reckless disregard for the truth ... sufficient to prove fraudulent intent." *Stamat*, 635 F.3d at 982. Although the omissions with respect to the corporate shares, doing business as name and license appear in several different places in his petition and schedules, they arise out of the same misunderstanding of the nature of a corporation. Therefore, it was not a "pattern of reckless indifference to the truth." *Id.* at 979. In *Stamat*, the court emphasized the high "level of education and business experience" attained by the debtors, a medical doctor and an accountant, further supporting the inference that their incorrect disclosures—including misstating their business

income as $53,309 rather than $265,012—were either intentionally fraudulent or due to a reckless disregard for the truth. *Id.*

In contrast, here Mr. Carney testified without contravention that his education is only slightly beyond high school, and that his only business venture was Joker's Bar and Grill—a venture which was a resounding failure. He was not represented by counsel in the formation of Danny Carney, Inc. Not only does the evidence show that the bar has consistently failed to generate profits, but also that the Debtor struggled even to keep it properly incorporated and in good standing. Mr. Carney testified without contravention at the August 2013 deposition that he had unsuccessfully tried to reinstate the corporation after it was involuntarily dissolved in July 2012 but that the forms were returned because the "paperwork was not filled out correctly." (Depo. Tr. 25:19-26:8 (Ex 6).) And here the evidence fails to demonstrate any reckless indifference where it is uncontroverted that the hapless Debtor sought and obtained the services of counsel while attempting to prepare his bankruptcy schedules.

### 2. *Purported Omission of Equipment and Inventory and Transfers*

The Plaintiff also contends that the Debtor failed to disclose: (1) fixtures, equipment, business supplies or inventory that he allegedly owned in Schedule B to his petition, (2) transfers of such assets to Danny Carney, Inc. during the two years pre-petition in his SOFA and (3) income he received from the operation of Jokers Bar and Grill during the two calendar years preceding the year the petition was filed in his SOFA. However, the Plaintiff did not meet his burden here to prove that the

omissions he points to were intentional or constituted a reckless indifference to the truth.

The Plaintiff's primary argument on this point is that the October 2009 Asset Sale Agreement selling certain assets of Perry's Riverside Pub, Inc. was signed by Mr. Carney individually, listed Mr. Carney individually as the buyer and was signed several months before Danny Carney, Inc. was incorporated. From this the Plaintiff argues that Mr. Carney failed to disclose assets at the bar which he purchased in October 2009. In the alternative, the Plaintiff suggests that if Mr. Carney later transferred such assets to Danny Carney, Inc., he failed to disclose that transfer in his SOFA.

One problem with the Plaintiff's argument is that, while the sale agreement may show that Mr. Carney purchased certain assets in October 2009, the document itself does not in itself demonstrate that he still owned those assets when he filed his bankruptcy petition and schedules on October 31, 2012. To the contrary, Mr. Carney testified at his meeting of creditors that the only physical assets purchased under the agreement were "some old inventory and barstools that are no longer even at the business." (Cr. Mtg. Tr. 23-24.) Consistent with that testimony, he testified at his August 2013 deposition, also received into evidence on the stipulation of the parties, that all of the original inventory purchased in 2009 had been used up by at least 2012. (Depo. Tr. 37:1-12.) Carney testified specifically that the inventory on stock as of the petition date was all new inventory which had been purchased by Danny Carney, Inc. (*Id.*)

The Debtor's testimony at the Section 341 meeting is somewhat unclear with respect to equipment. He testified that "there is not much equipment there other than -- the only thing I can think of is the barstools and inventory that would be owned. The rest is the property owners." (Cr. Mtg. Tr. 24.) The Debtor subsequently amended his Statement of Financial Affairs on February 25, 2013 to disclose that he held or controlled at the Sycamore property neon signs and alcohol dispensers owned by Euclid Beverage, a non-functioning ATM machine owned by Perry Spohn, a pool table and juke box owned by Wayne's Vending, and two dartboards owned by Bob Corrigan. It is unclear if this is what he referred to as the "rest" in his Section 341 meeting testimony. Mr. Carney also testified at the Section 341 Meeting that "Perry" owns the equipment he was "purchasing under this asset sale agreement," but the question and answer are unclear whether he meant that Perry Spohn continued to own the unspecified equipment or other property even after the sale, or merely meant that Perry was the owner at the time of the sale. (*Id.*) None of those participants in this examination, including Mr. Spohn's attorney, bothered to seek clarification of these statements, although they had the opportunity to do so.

The Plaintiff also did not attempt to controvert this testimony during his examination of the Debtor at trial, nor present any evidence of his own on this point. Notably, the Plaintiff failed to present any details or evidence as to what precise equipment was allegedly sold pursuant to the October 2009 asset sale agreement. The Asset Sale Agreement states that the "store furnishings, furniture and equipment, office equipment and supplies, counters and shelves" to be sold are those

"listed on the attached Exhibit 'A.'" (Ex. 1.) Yet the copy of the Asset Sale Agreement the Plaintiff was submitted to the court without the referenced exhibit. At his August 2013 deposition, Mr. Carney testified that he did not recall ever seeing an Exhibit A to the agreement. (Depo. Tr. 68:2-11.)[3] Despite personally signing the agreement as president of Perry's Riverside Pub, Inc., Mr. Spohn did not testify at the trial or present another witness or evidence regarding the existence of "Exhibit A" or as to what physical assets were allegedly sold and transferred to Mr. Carney by that agreement. The Plaintiff thus failed to meet his burden of demonstrating that when the bankruptcy petition was filed, nearly three years after the parties signed the Asset Sale Agreement, the Debtor owned any of the physical assets allegedly purchased in October 2009. Nor has the Plaintiff demonstrated that any such assets ever were transferred to Danny Carney, Inc., much less transferred within two years of the petition date.

Even if there was any equipment that was sold pursuant to the agreement and still owned by Mr. Carney as of the petition date, the Plaintiff failed to demonstrate that Mr. Carney knew he owned such equipment as of the date of the petition. The ownership of the property is not necessarily clear from the agreement. The agreement provided for payment of the purchase price in monthly installments and the Debtor ultimately defaulted by failing to make all required monthly payments. Mr. Spohn himself, through his attorney, argued at the Section 341 meeting that Mr. Spohn still owned the assets pursuant to the agreement. He based the argument on

---

[3] At the Section 341 Meeting, Mr. Spohn's counsel at the time, Mark Doherty, stated that he did not have a copy of Exhibit A. (Section 341 Mtg. Tr. 25.)

paragraph 8 of the agreement, which states that upon "tender of the final payment of the sales price at closing as hereinabove set forth, Seller shall deliver to Buyer a Bill of Sale for the stock in trade and other property hereinabove described." From this, Mr. Spohn argued that title was not to pass until payment in full, which never occurred. This conclusion, however, is not necessarily accurate under Illinois law. Paragraph 4 of the agreement states that at "the time of closing all property agreed to be sold hereunder shall be delivered to Buyer," and there is no dispute that whatever property the Plaintiff contends was owned but not disclosed by the Debtor was delivered to the Debtor in October 2009. Under Illinois law, unless "otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ... even though a document of title is to be delivered at a different time or place." 810 ILL. COMP. STAT. ANN. 5/2-401.

Nonetheless, the fact that the Plaintiff himself argued that he was still the owner of the assets subject to the sales agreement supports the Debtor's testimony that he was unsure of who owned the property under the agreement. Mr. Carney also testified at the deposition that he did not understand the nature of incorporation, and had believed that that once he "incorporated" the "stuff that was in the bar, if the business ran it, that that property belonged to the business" automatically. (Depo. Tr. 65:13-24.) Because of the Debtor's lack of business experience, it is plausible that he did not fully understand who owned any property that was transferred pursuant to the Asset Purchase Agreement, and the Plaintiff failed to meet his burden of

demonstrating that it was fraudulent or reckless for the Debtor to believe otherwise.

The Plaintiff also argues that the Debtor received income from the operation of the bar and restaurant which he failed to disclose in his bankruptcy schedules. Again, the Plaintiff failed to meet his burden of proof to support this argument. The Debtor testified at the meeting of creditors that since its incorporation, he had never received any distribution, draw or wages from Danny Carney, Inc. The Plaintiff provided no evidence to controvert this testimony or to show that the Debtor did personally receive any income from the corporation.[4]

Question 1 for the SOFA asks for the "*gross* amount of income" the debtor received from employment or the operation of a business during the two calendar years preceding the year the petition was filed. In response to this question the Debtor did not list any gross income from the operation of the bar during the period of January 1, 2010 to February 3, 2010, the period when the business was operating but unincorporated. The Debtor did testify at trial that he made sales to customers during that month and three days, but did not know how much. The Plaintiff provided no evidence of how much these sales were, or if they were more than negligible. In any event, given the Debtor's education and lack of business experience, the court finds that the Plaintiff failed to demonstrate that the Debtor

---

[4] At trial the Debtor at one point testified that he thought he might have filed a federal tax return for Danny Carney, Inc. for one year that showed a profit. The Debtor appeared confused while saying this, unable to recall even when this occurred. Carney later testified that he had turned over copies of all filed corporate tax returns of Danny Carney, Inc. to the Plaintiff and that none of them showed a profit. The only corporate tax return offered by the Plaintiff into evidence was for the tax year beginning December 1, 2009 and ending on September 30, 2010. This tax return showed gross receipts of $61,377 and a net taxable loss of -$36,532. (Ex. 8.) In any event, the Plaintiff again has provided no evidence to controvert the Debtor's testimony that even if the corporation was profitable for any period of time, he never received wages or any form of distribution from the corporation.

knew or should have known that the reference to "gross" income in the SOFA required him to list all actual receipts by the restaurant and bar during the 34-day period of 2010 before the company was incorporated—a period more than two years before the petition date.

### 3. *Purported Omission of Contributions to Danny Carney, Inc.*

Finally, the Plaintiff argues that the Debtor was required but failed to disclose in Schedule J and in response to question 10 of his SOFA the amount of personal funds he contributed to Danny Carney, Inc. to pay its ongoing pre-petition expenses. Schedule J asks the debtor to estimate "the average or projected monthly expenses of the debtor and the debtor's family at [the time case [is] filed." The Debtor listed "$0.00" for "[r]egular expenses from operation of business, profession, or farm." Question 10 to the Statement of Financial Affairs asks the debtor to list "all property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." In response, the Debtor marked "none."

As discussed above, the Plaintiff failed to demonstrate that the Debtor transferred any inventory, equipment or other physical assets to Danny Carney, Inc. during the two years preceding the petition date or that Carney expected to contribute such assets in the future. The Debtor did testify at trial that he regularly contributed money from his own salary from his job at ADP to his corporation in order to enable the business to pay immediate business expenses when the business had

insufficient cash on hand. He testified that the business had to purchase inventory on a weekly basis, that he had no line of credit with vendors, and that in particular liquor vendors required payment in cash on delivery. Carney transferred the money from his personal account to the business' account from which the business then paid the bill. According to the Debtor, the personal funds he used for the business paid also occasionally paid for monthly rent and utility bills, all of which had to be paid in order for his bar to operate.

The Plaintiff did not present evidence as to when or how much money the Debtor contributed to Danny Carney, Inc. Instead, he elected to argue from an exhibit prepared by the Debtor that the company experienced a net operating loss of $38,670.73 during the six-month period from March 2012 through August 2012 and, therefore, that the Debtor must have contributed this amount during that period. (Ex. 12.) That conclusion, however, does not follow from the Debtor's testimony. The Debtor testified that he furnished funds to pay the bills of the company that needed to be paid when the corporation did not have sufficient funds to do so. But there was no testimony or other evidence as to how much cash and other assets the corporation had at any given specific point in time. The Plaintiff's conclusion would only be logical if the corporation had no other cash or other assets already on hand during the period and, critically, that the corporation had no other cash and assets during the period in question. Carney testified at trial that he was not sure if there was any month that he did not use personal funds to pay expenses of the restaurant. He also credibly testified that as of the petition date he intended to continue operating the restaurant,

and knew that he would have to continue contributing personal funds at least until the bar and restaurant could become profitable on its own. However, the fact that he contributed to the corporation to keep the business operating, and that he had done so since the corporation was formed and intended to do so for the foreseeable future tends to show that those contributions were made "in the ordinary course of business." Since question 10 to the SOFA asks only about transfers *not* made in the ordinary course of the business or financial affairs of the debtor, it was not false for the Debtor to omit those contributions.[5]

Because the contributions were made in the ordinary course of business and because the Debtor admits that he intended to continue to make such contributions to the corporation as of the petition date, he should have listed them as expected "regular expenses from operation of business, profession, or farm" in Schedule J. Here again the Plaintiff failed to demonstrate that the omission was intentional or caused by a reckless disregard for the truth. Like the omission of the corporate interests in Schedule B, the Debtor in fact did disclose the business expenses elsewhere in documents filed on the date of the petition. In his Form B22A Chapter 7 Statement of Current Monthly Income, he disclosed that he operated a business which in the prior six calendar months had average monthly gross receipts of

---

[5] The Debtor did not list these contribution as "payment to creditors" in response to question 3 of the Statement of Financial Affairs. But there was no evidence that the vendors who were ultimately paid were direct creditors *of the Debtor*. Nor was evidence presented that Danny Carney, Inc. was a creditor of the Debtor. The court specifically gave both parties the opportunity to submit a supplemental statement identifying any such debt on March 31, 2016. Although both parties filed supplemental statements in May 2016, neither identified any debt owed by the Debtor to Danny Carney, Inc. or any direct debt owed by the Debtor to the ultimate recipient of the money that the Debtor transferred to the corporation. (ECF Nos. 92, 93.) Therefore, the Plaintiff failed to prove that the response to question 3 was false.

$4,915.10 and monthly ordinary and necessary business expenses of $10,367.88. (Case No. 12-B-84145, ECF No. 4.) While his disclosure does not necessarily show that he intended to continue to operate the bar or that he had contributed personal assets to support the bar, it certainly was enough to put creditors and the trustee on notice. It also tends to support the conclusion, not controverted by the Plaintiff's evidence, that the Debtor was not attempting to hide information by omitting the business expenses on his Schedule J. It is also notable that Mr. Carney freely informed the trustee and creditors at the Section 341 meeting of creditors both that he continued to operate the bar and restaurant and that rather than receiving profits he had "been actually putting money in." (Section 341 Tr. 18-19.) Therefore, while the omission of business expenses in Schedule J appears to have been false, the Plaintiff did not meet his burden of demonstrating that the omission was intentional or due to reckless disregard for the truth.

### B. 11 U.S.C. § 727(a)(2)

The Plaintiff next argues that the Debtor must be denied a discharge pursuant to Section 727(a)(2) of the Bankruptcy Code. Under this section:

> The court shall grant the debtor a discharge, unless —
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2). The purpose of this provision is to deny discharge of the debtor "who tries to avoid paying her creditors by concealing or otherwise disposing of her assets." *MWRD Employees' Credit Union v. Frazier (In re Frazier)*, 551 B.R. 410, 422-23 (Bankr. N.D. Ill. 2016) (citing *Blomberg v. Riley (In re Riley)*, 351 B.R. 662, 670 (Bankr. E.D. Wis. 2006)). Again, mindful of the primary aim of the bankruptcy code to provide a means for debtors to receive a "fresh start," "denial of discharge is a 'drastic' remedy reserved for only the truly 'pernicious' debtor." *Frazier*, 551 B.R. at 422. As with Section 727's other sections, the grounds for denying discharge here are construed strictly against the plaintiff and liberally in favor of the debtor, *Sullivan v. Ratz*, 551 B.R. 338, 2016 U.S. Dist. LEXIS 11150, 2016 WL 379729, at *9 (N.D. Ill. 2016), and the plaintiff bears the burden of proving each of the elements by a preponderance of the evidence. *Scott*, 172 F.3d at 966-67.

As discussed above, the Plaintiff failed to prove that the Debtor concealed property with the intent to hinder, delay or defraud creditors by failing to properly schedule his interests in Danny Carney, Inc. or a liquor license in his name. His interest in the corporation and the nature of the business were disclosed in other portions of his schedules. In addition, the record is clear that he informed the trustee and creditors, including Mr. Spohn's attorney, about the company at the Section 341 meeting of creditors.

The Plaintiff also argues that the Debtor transferred personal funds and other assets to Danny Carney, Inc. within one year prior to the bankruptcy petition with the necessary intent to hinder, delay or defraud creditors. To establish the exception

to discharge under section 727(a)(2), the objector must prove that "(1) the [debtor] (2) transferred (3) the debtor's property, (4) with the intent to hinder, delay, or defraud a creditor (5) within one year of bankruptcy." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002). This "consists of two components: an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor." *Id.* (internal citation omitted). As discussed at length above, the Plaintiff failed to demonstrate that the Debtor transferred any specific equipment, inventory or other physical assets to Danny Carney, Inc. within one year prior to the filing date.

The question of whether the debtor had the necessary wrongful intent is a factual question. *In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998). The plaintiff must prove actual intent; constructive intent will not do. *McWilliams*, 284 F.3d at 790. However, because it is unlikely that a debtor will admit fraud, intent may be established by circumstantial evidence. *Id.* As also discussed above, while the Plaintiff failed to demonstrate that the Debtor transferred equipment, inventory or other physical assets, he did demonstrate that the Debtor provided money to Danny Carney, Inc. from time to time within one year before the petition date to enable the company to pay bills from vendors necessary for its continuing operation. But it has not been shown how much money in fact was transferred.

In any event, here, too, the Plaintiff failed to prove that the Debtor transferred such money with the requisite intent to hinder, delay or defraud his creditors. As discussed above, his failure to disclose the corporation's existence in some portions of

his bankruptcy schedules has not been shown to be intentional, and in fact Carney

disclosed his interest in the corporation in other portions of the schedules and at the

meeting of creditors. The weight of the evidence shows, and this court therefore finds,

that the Debtor from time-to-time contributed funds to the corporation solely in an

effort—a vain effort as in hindsight appears to be the case—to keep the bar and

restaurant afloat and to protect the value of his ownership interests, all assets of the

bankruptcy estate.

The Plaintiff also failed to prove the existence of any of the traditional "badges

of fraud" in connection with the Debtor's contributions to Danny Carney, Inc. These

badges

> "include a transfer of property that renders the debtor insolvent
> or greatly diminishes his estate; a transaction whereby the debtor
> retains the benefit of the transferred property; a transfer that is
> made while litigation is pending; secret transactions outside the
> usual mode of business; a transfer conducted in a manner
> different from ordinary methods; and a transfer made in exchange
> for little or no consideration."

*Freeland v. Enodis Corp.*, 540 F.3d 721, 733 (7th Cir. 2008). No "one badge of fraud

constitutes a per se showing of fraudulent intent," though "the presence of a number

of badges of fraud [raises] a strong inference of fraudulent intent." *Id.* Here, the

Plaintiff failed to demonstrate how much money the Debtor contributed to Danny

Carney, Inc., much less that the transfer rendered him insolvent.

Because the Plaintiff failed to demonstrate that Danny Carney, Inc. was

insolvent at the time of transfer, he fails to demonstrate that the transfer could cause

the Debtor to become insolvent or that the transfer lacked consideration. For a

wholly-owned corporation, at least if the corporation is solvent, each penny of value

contributed by the owner to the corporation should simply increase the value of the

owner's equity interest in the corporation.  Here, although the Plaintiff provided

evidence that the corporation was regularly unable to pay all of its ongoing expenses

with the cash that it had on hand, he did not provide evidence that the corporation

was insolvent at the time that the Debtor contributed funds to it during the year

before the bankruptcy petition.  To the contrary, the Chapter 7 trustee was ultimately

able to sell the Debtor's equity interest in the assets of Danny Carney, Inc. for

$15,000. (*See* Order Approving Sale, Case No. 12-B-84145 (ECF No. 44); Final

Account (ECF No. 53).)  Nor did the Plaintiff demonstrate that the transfers were

made in secret, were made outside the usual mode of business or using unordinary

methods, or that there was any pending litigation against the Debtor at the time.

## CONCLUSION

The Plaintiff has failed to prove by a preponderance of the evidence that the Debtor acted with the requisite fraudulent intent to deny him his discharge under Chapter 7 of the Bankruptcy Code.  Accordingly, the Plaintiff's objections to Debtor's discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4) are OVERRULED and judgment will be entered in this adversary proceeding in favor of the Debtor, Danny Carney, and against the Plaintiff, Perry C. Spohn.

A separate order shall be entered with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: September 20, 2016

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge